IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRANSACTION HOLDINGS LTD. L.L.C. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 06-43 (SLR) |
| ) | |
| IYG HOLDING CO., 7-ELEVEN, INC., ) | JURY TRIAL DEMANDED |
| VCOM FINANCIAL SERVICES, INC. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS IYG HOLDING CO., 7-ELEVEN, INC. AND
VCOM FINANCIAL SERVICES, INC.'S OPENING BRIEF IN SUPPORT OF
<u>THEIR MOTION TO STAY PENDING REEXAMINATION</u>**

OF COUNSEL:

Eric J. Lobenfeld
Ira J. Schaefer
Arun Chandra
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, NY 10022

Dated: January 26, 2007

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
Fax: (302) 658-1192
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants
IYG Holding Co., 7-Eleven, Inc.
and Vcom Financial Services, Inc.*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...........................................................................................................1

II. NATURE AND STAGE OF PROCEEDINGS.............................................................2

III. SUMMARY OF THE ARGUMENT ............................................................................4

IV. STATEMENT OF FACTS ............................................................................................4

IV. ARGUMENT...................................................................................................................7

    A.    Legal Standard ......................................................................................................7

    B.    This Case is Appropriate For the Court to Use Its Discretion to Grant a Stay ..........................................................................................................7

        i. A Stay Would Not Prejudice THL................................................................7

        ii. A Stay Will Simplify the Issues in Question and the Trial of this Case ...................................................................................................8

        iii. Because Discovery Has Not Even Commenced, a Stay is Appropriate ...................................................................................................10

V. CONCLUSION................................................................................................................11

## TABLE OF AUTHORITIES

Cases

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*,
   C.A. No. 05-590-GMS, 2006 WL 2375035
   (D. Del. Aug. 16, 2006) ..................................................................................7, 8, 9, 10

*Clintec Nutrition Co. v. Abbott Laboratories*,
   No. 94 C 3152, 1995 WL 228988 (N.D. Ill. Apr. 14, 1995).........................................8

*Cost Bros., Inc. v. Travelers Indem. Co.*,
   760 F.2d 58 (3d Cir. 1985)...........................................................................................7

*Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1988)....................................................................................7

*Softview Computer Prods. Corp. v. Ergo View Tech. Corp.*,
   No. 97 Civ. 8815 KMW HBP, 2000 WL 1134471
   (S.D.N.Y. Aug. 10, 2000) ........................................................................................8, 9

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
   766 F. Supp. 212 (D. Del. 1991)..................................................................................7

*VData, LLC v. Aetna, Inc.*,
   Civil No. 06-1701 JNE/SRN, 2006 WL 3392889
   (D. Minn. Nov. 21, 2006) ............................................................................................8

## TABLE OF AUTHORITIES

Cases

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*,
   C.A. No. 05-590-GMS, 2006 WL 2375035
   (D. Del. Aug. 16, 2006) ..................................................................................7, 8, 9, 10

*Clintec Nutrition Co. v. Abbott Laboratories*,
   No. 94 C 3152, 1995 WL 228988 (N.D. Ill. Apr. 14, 1995).........................................8

*Cost Bros., Inc. v. Travelers Indem. Co.*,
   760 F.2d 58 (3d Cir. 1985)...........................................................................................7

*Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1988)....................................................................................7

*Softview Computer Prods. Corp. v. Ergo View Tech. Corp.*,
   No. 97 Civ. 8815 KMW HBP, 2000 WL 1134471
   (S.D.N.Y. Aug. 10, 2000) ........................................................................................8, 9

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
   766 F. Supp. 212 (D. Del. 1991)..................................................................................7

*VData, LLC v. Aetna, Inc.*,
   Civil No. 06-1701 JNE/SRN, 2006 WL 3392889
   (D. Minn. Nov. 21, 2006) ............................................................................................8

I.  INTRODUCTION

Defendants IYG Holding Co.,[1] 7-Eleven, Inc. and Vcom Financial Services, Inc. (collectively, "7-Eleven") move this Court for a stay of this litigation pending resolution of a petition for reexamination of the patent-in-suit by the U.S. Patent and Trademark Office ("PTO"). Plaintiff Transaction Holdings Ltd. LLC ("THL") had indicated a willingness to agree to the stay, but wished to impose certain conditions on 7-Eleven's conduct and that of non-party NCR Corporation ("NCR"). (Declaration of David E. Moore, dated January 12, 2006 ("Moore Decl.") ¶ 12.) NCR is defending its customer, 7-Eleven, in this suit. When parties were unable to agree to the terms of a stay or dismissal without prejudice (Moore Decl. ¶ 14), THL's counsel filed a motion to withdraw. This motion followed.

At the outset, 7-Eleven acknowledges that this Court's general practice is not to stay litigation in favor of a reexamination proceeding. However, several factors make this an appropriate case for departing from that practice.

First, as acknowledged by THL's counsel in its motion to withdraw, despite the filing of the Complaint a year ago, virtually nothing has happened to move this litigation beyond the initial stages. (*See* Motion of Plaintiff's Counsel for Leave to Withdraw their Appearances on Behalf of Plaintiff Transaction Holdings Ltd. LLC, filed January 24, 2006 ("Withdrawal Motion"), page 3 (noting that "only pre-discovery disclosures have been made" and that "[t]here are no immediate deadlines facing Transaction Holdings").) In fact, to date, THL has not responded to 7-Eleven's interrogatories or document

---

[1] As stated in 7-Eleven's Answer, on or about November 9, 2005, the IYG Holding Co. was merged into 7-Eleven, Inc. and no longer exists. (Answer ¶ 1.)

requests[2] and has not served its own interrogatories or document requests. Should the Court grant THL's Counsel's Motion to Withdraw, there may well be a further delay while THL's new (and third) counsel gets up to speed.

Second, the PTO has very recently granted the reexamination petition filed by NCR, indicating that there is a substantial new question of patentability of the relevant claims of the patent-in-suit based on two pieces of prior art submitted by NCR, which were not before the PTO during the original prosecution of the asserted patent. The materiality of this prior art will be a threshold issue in this action, and, therefore, the PTO's reexamination ruling will be highly relevant to the litigation regarding the asserted claims' validity.

A stay will conserve the resources of this Court and both parties by allowing the PTO to address the question of the materiality, scope and effect of the previously uncited prior art. In light of THL's relative inactivity over the past year, it will suffer no prejudice from a stay.

## II.    NATURE AND STAGE OF PROCEEDINGS

THL initiated this litigation on January 23, 2006, alleging that 7-Eleven's Vcom Automated Teller Machines ("ATM") machines, supplied by NCR, infringe U.S. Patent No. 6,945,457 (the "'457 Patent").[3] Briefly, the '457 Patent is directed to an

---

[2] In light of the parties' attempts to reach agreement regarding a stay, 7-Eleven agreed to extend the deadline for THL to respond to its interrogatories and document requests. (Moore Decl. ¶ 13.)

[3] Though THL has not formally indicated the claims being asserted in this litigation, there is no reason to believe that the asserted claims would not be selected from claims 1, 2, 3, 5, 9, 10 and 14. The remaining claims are plainly inapplicable here. For example, claims 6-8 and 11-13 require the dispensing of encodable currency, such as digital cash, electronic cash and encodable credit, none of which are implicated by the Vcom ATMs.

2

"[i]ntegrated banking and transaction apparatus" that includes both a traditional ATM as well as an Internet interface that allows a user to make retail transactions over the Internet. 7-Eleven, in its Answer, has asserted the defense as well as a counterclaim of patent invalidity based on, *inter alia*, prior art.

Although this litigation was initiated a year ago, it has remained dormant for virtually all of that period. First, THL's present litigation counsel, its second counsel herein, only recently made its appearance in this action (on November 28, 2006). Curiously, a mere two months later, THL's present litigation counsel is seeking to withdraw from this suit, informing the Court that the managing shareholder of THL "has refused to follow the advice rendered by counsel and/or has acted contrary to such advice. In light of their material differences, counsel and Transaction Holdings believe that it is best for the attorneys of Fox Rothschild LLP to withdraw their appearances on behalf of Transaction Holdings." (Withdrawal Motion, at page 3.) Second, the parties only recently had their Scheduling Conference with the Court on December 14, 2006. Third, THL has done almost nothing to move this case in the year it has been pending. THL has not conducted or sought any discovery from 7-Eleven in this action. Specifically, while 7-Eleven served its interrogatories and document requests on December 13, 2006, THL has not even responded to those interrogatories and document requests. Nor has THL served its own interrogatories or document requests. (Moore Decl. ¶ 8.)

---

Moreover, the Vcom ATMs do not include any of the esoteric components recited in claims 4, and 15-27, nor do they allow the "purchase [of] a floral service from a floral delivery service," as recited in claims 28-37.

3

Under the Court's Scheduling Order, fact discovery is not scheduled to be completed until December 14, 2007, and expert discovery is not scheduled to be completed until March 14, 2008. Finally, trial is currently scheduled for August 4, 2008.

### III.    SUMMARY OF THE ARGUMENT

7-Eleven requests a stay of this litigation pending the outcome of the PTO's reexamination of the '457 Patent. The reexamination will allow the PTO to bring its expertise to bear on the questions of whether the submitted prior art, which was not before the PTO during the original prosecution of the '457 Patent, invalidates one or more of the relevant claims of the '457 Patent.

Because this motion is brought at such an early stage in this litigation and immediately after the PTO granted the reexamination petition, this request is appropriate, will cause no undue delay or prejudice to any party, and will conserve the resources of the Court and the parties. Under these circumstances, a stay of this litigation would be in everyone's best interests and further judicial economy.

### IV.    STATEMENT OF FACTS

On January 23, 2006, THL commenced this action alleging that 7-Eleven's Vcom ATM machines infringed the '457 Patent. The asserted claims of the '457 Patent are directed to an "integrated banking and transaction apparatus." For example, claim 1 is as follows:

> 1. Integrated banking and transaction apparatus for use by a consumer, comprising: an automated teller machine; and means for providing a retail transaction to the consumer through an Internet interface to the automated teller machine.

4

(Col. 5, lines 53-58.) Similarly, claim 9 recites a "method of providing banking services and transaction capability to a consumer in a single automated transaction machine":

> 9. A method of providing banking services and transaction capability to a consumer in a single automated transaction machine, comprising the steps of: providing automated teller machine access to the consumer via the automated transaction machine; and providing Internet access to the consumer via the automated transaction machine and realizing a retail transaction.

(Col. 6, lines 14-21.)

NCR filed a petition for reexamination of the '457 Patent with the PTO on November 7, 2006, soon after it agreed to assume the defense of this litigation on behalf of 7-Eleven. (Moore Decl. Ex. 1: Reexamination Petition, dated Nov. 7, 2006.) The reexamination petition requested reexamination of claims 1, 2, 3, 5, 9, 10 and 14, in light of two prior art references: (i) Alex Subrizi & William H. Faust, *The Virtual ATM*, Bank Marketing 17-20 (Nov. 1994) (the "Subrizi reference"); and (ii) U.S. Patent No. 5,397,886, issued to Robert J. Mos et al. (the "Mos patent"). (Moore Decl. Ex. 1 at 1-2.) These two references were not of record during the prosecution of the '457 Patent. The petitioner also submitted two additional references: (i) Frank Vizard, *Building the Information Superhighway*, Popular Mechanics 29-33 (Jan. 1994) (the "Vizard reference"); and (ii) Wikipedia entry for "Information Superhighway," that explain that, at the time of the invention, the phrase "information superhighway" referred to the Internet.[4]

---

[4] For a more detailed discussion of how the submitted references disclose each element of the invention claimed in the '457 Patent, please refer to the claim charts at Moore Decl. Ex. 1 at 3-8.

5

On January 4, 2007, less than two months after the filing of the petition, the PTO granted the request for an *ex parte* reexamination. (Moore Decl. Ex. 2: *Ex Parte Reexamination Communication Transmittal Form*.) In explaining his reasoning, the Examiner noted:

> 9.   It is agreed that the reference of Subrizi would have been considered important by a reasonable examiner in deciding whether or not at least independent **claim 1** was patentable, for the reasons discussed *infra*.
>
> Specifically, regarding **claim 1**, as additionally discussed by the third party requestor, Subrizi discloses an integrated banking and transaction apparatus for use by a consumer [see pages 17-20]. . . .
>
> * * *
>
> 10.   Similarly, as outline by the third party requestor, each of the limitations of independent claim 9, being "a method" having a similar process as discussed above with respect to the apparatus of claim 1, can also be interpreted as being taught by Subrizi. Thus, while not fully being discussed herein, the examiner agrees with the analysis of the third party requestor regarding Subrizi with respect to independent claim 9. . . .
>
> 11.   These references would likely have been important to a reasonable examiner in deciding whether or not the claims were patentable. The above discussed teachings were not present during the prosecution of the application which became the '457 Patent. Thus, the references raise a substantial new question regarding independent claims 1 and 9 of the instant '457 Patent.

(Moore Decl. Ex. 2 at 4-6 (emphasis in original).)

6

## IV.   ARGUMENT

### A.   Legal Standard

The decision to stay a case rests in the Court's discretion. *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). Such authority to grant a stay also applies to patent litigation suits where a reexamination by the PTO has been granted. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted); *see also United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991).

"In determining whether a stay is appropriate, the court's discretion is guided by the following factors: '(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.'" *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 05-590 GMS, 2006 WL 2375035, at *5 (D. Del. Aug. 16, 2006) (quoting *Xerox Corp. v. 3 Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)); accord *United Sweetener*, 766 F. Supp. at 217.

### B.   This Case is Appropriate For the Court to Exercise Its Discretion to Grant a Stay

In this action, all three factors weigh in favor of granting a stay pending the outcome of the reexamination proceeding.

#### i.   A Stay Would Not Prejudice THL

Here, as discussed above, THL has been lackluster in prosecuting this litigation, and has shown no desire to move it forward. After filing this action a year ago, THL

7

recently changed its litigation counsel and intends to change its counsel yet again. THL has conducted or sought no discovery and has not even served any discovery requests upon 7-Eleven. (*See* Withdrawal Motion, at page 3 ("Counsel seek to withdraw at this early stage of the case, where only pre-discovery disclosures have been made. . . . There are no immediate deadlines facing Transaction Holdings in this action. . . .").) Further, THL is solely a patent-licensing entity, with no products of its own on the market. Thus, THL's relief, should it prevail here, will likely be monetary only, which THL can recover upon adjudication of this action. Thus, time is hardly of the essence. Additionally, soon after NCR agreed to take over the defense of this lawsuit, its in-house patent counsel filed a detailed reexamination petition with the PTO. The PTO responded, speedily, and granted the reexamination petition, which suggests an eagerness on its part to review the '457 Patent expeditiously.

In short, THL's failure to diligently advance this litigation, its lack of market presence and the PTO's quick grant of the reexamination petition show that THL will suffer no prejudice, much less "undue" prejudice, if a stay is granted. *See, e.g., VData, LLC v. Aetna, Inc.*, Civil No. 06-1701 JNE/SRN, 2006 WL 3392889, at *5 (D. Minn. Nov. 21, 2006); *Clintec Nutrition Co. v. Abbott Labs.*, No. 94 C 3152, 1995 WL 228988, at *3 (N.D. Ill. Apr. 14, 1995). Indeed, THL's initial indication that it was willing to agree to a stay fully supports this conclusion.

### ii. A Stay Will Simplify the Issues in Question and the Trial of this Case

Courts have recognized that a stay is appropriate where a reexamination proceeding is likely to simplify the issues in dispute, streamline discovery and result in a trial of more focused issues. *Abbott Diabetes*, 2006 WL 2375035 at *6; *see also Softview*

8

*Computer Prods. Corp. v. Ergo View Tech. Corp.*, No. 97 Civ. 8815 KMW HBP, 2000 WL 1134471, at *2 (S.D.N.Y. Aug. 10, 2000) (discussing the benefits of a stay). Such will be the case here, because during the reexamination the PTO will review the newly cited prior art and determine its impact on the relevant claims of the '457 Patent.[5] As such, the claims under review may be rendered invalid, resulting in their cancellation or modification. Indeed, PTO statistics show that in the twenty-five years since the start of the *ex parte* reexaminations, 74 percent of the time claims are either cancelled outright or changed. (Moore Decl. Ex. 7: PTO's *Ex Parte* Reexamination Filing Data from July 1, 1981 to September 30, 2006.)

Needless to say, this Court as well as the parties will conserve resources by staying this action. First, because the claims' scope may change, discovery related to claim construction may well turn out to be a waste of the parties' resources, and any related motion practice could likewise waste the Court's time. Second, upon reexamination by the PTO, the parties and this Court will benefit from the resulting prosecution and the Examiner's observations, and will likely realize the benefit of litigating more focused issues. Specifically, issues related to claim construction, patent validity based upon prior art, priority issues, and whether certain asserted claims will even remain in the patent will be directly addressed in, and affected by, the reexamination decision. Of course, the outcome of the reexamination proceeding may also encourage settlement between the parties. Finally, as Judge Sleet recently noted, a stay ensures that

---

[5] Because this Court is familiar with patent reexamination proceedings, this Memorandum does not include a detailed discussion of the case law regarding such proceedings or their impact on patent litigation. Instead, this Memorandum focuses on the issues that are germane to 7-Eleven's motion.

9


"the court would not run the risk of inconsistent rulings or issuing advisory opinions." *Abbott Diabetes*, 2006 WL 2375035 at *6 (citation omitted).

Thus, this factor also favors the grant of a stay pending the outcome of the reexamination proceeding.

### iii. Because Discovery Has Not Even Commenced, a Stay is Appropriate

A stay is proper if requested early in litigation before substantial discovery and trial preparation have taken place. *See* 4 DONALD S. CHISUM, CHISUM ON PATENTS § 11.07[4][b][iv] (2004). Here, discovery by THL has not even commenced, much less completed. Other than the filing of the Complaint and Answers, initial disclosures, the submission of *pro hac* petitions and 7-Eleven's service of its interrogatories and document requests, virtually every aspect of the case remains (e.g., document discovery, depositions, Markman briefing, Markman ruling, expert reports, dispositive motions and rulings and all pretrial filings).

Thus, this factor too favors the grant of a stay pending the outcome of the reexamination proceeding.

## V.   CONCLUSION

For the foregoing reasons, 7-Eleven respectfully requests that this Court grant its Motion for a Stay Pending Reexamination of the '457 Patent.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Eric J. Lobenfeld
Ira J. Schaefer
Arun Chandra
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, NY 10022

Dated:   January 26, 2007

By: /s/ David E. Moore
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19801
    Tel:  (302) 984-6000
    Fax:  (302) 658-1192
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendants*
*IYG Holding Co., 7-Eleven, Inc.*
*and Vcom Financial Services, Inc.*

774673 / 30232

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 26, 2007, the attached document was hand-delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

Gregory B. Williams
Fox Rothschild LLP
919 North Market Street, Suite 1300
P.O. Box 2323
Wilmington, DE 19899-2323

I hereby certify that on January 26, 2007, I have Electronically Mailed the documents to the following non-registered participants:

Gerard P. Norton
Jonathan R. Lagarenne
Fox Rothschild LLP
990 Lenox Drive
Lawrenceville, NJ 08648
gnorton@foxrothschild.com
jlagarenne@foxrothschild.com

By:   /s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

737994 / 30232