## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AUTOMATED TRANSACTIONS LLC,       )
                                   )
    Plaintiff-Counterclaim Defendant,  )    C.A. No. 06-043-SLR
                                   )
    v.                             )    **JURY TRIAL DEMANDED**
                                   )
IYG HOLDING CO., 7-ELEVEN, INC.,   )    **PUBLIC VERSION**
VCOM FINANCIAL SERVICES, INC. and  )
CARDTRONICS USA, INC.,             )
                                   )
    Defendants-Counterclaimants.   )


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
## SUMMARY JUDGMENT OF NON-INFRINGEMENT

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants-Counterclaimants
IYG Holding Co., 7-Eleven, Inc., Vcom
Financial Services, Inc. and Cardtronics USA,
Inc.*

OF COUNSEL:

Eric J. Lobenfeld
Ira J. Schaefer
Arun Chandra
Brian G. Strand
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000

Dated: October 8, 2010
Corrected Version Dated: October 18, 2010
Public Version Dated: October 28, 2010
987640/ 30232

# TABLE OF CONTENTS

I.     NATURE AND STAGE OF PROCEEDINGS ............................................................. 1

II.    SUMMARY OF ARGUMENT ............................................................................... 2

III.   STATEMENT OF MATERIAL FACTS ................................................................ 4

    A.    ATL's Allegations of Infringement .......................................................... 4

    B.    The Asserted Claims of the Patents-In-Suit ............................................ 4

        1.    The '457 Patent .............................................................................. 4

        2.    The Continuation Patents ............................................................... 7

    C.    The Accused Vcom ATMs ...................................................................... 11

IV.   LEGAL STANDARD FOR SUMMARY JUDGMENT ..................................... 15

V.    THE VCOM ATMS DO NOT INFRINGE THE ASSERTED CLAIMS,
    AS A MATTER OF LAW ..................................................................................... 16

    A.    The Law Regarding Infringement .......................................................... 16

    B.    The Accused Vcom ATMs Do Not Allow Users to Access the Internet ............. 17

        1.    The '457 Patent Is Not Infringed ................................................... 17

        2.    The Continuation Patents Are Not Infringed ................................. 20

    C.    The Accused Vcom ATMs Do Not Infringe Any Asserted Claims
        Because They Do Not Have a Smartcard Reader *and* Encoder *and* a Magnetic ......
        Stripe Reader *and* Encoder ................................................................... 22

        1.    The '457 Patent Is Not Infringed ................................................... 22

        2.    The Continuation Patents Are Not Infringed ................................. 24

    D.    ATL Cannot, as a Matter of Law, Establish that the Accused Vcom ATMs
        Infringe the Patents-in-Suit under the Doctrine of Equivalents ............................ 25

VI.   CONCLUSION ........................................................................................ 30

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ............................................................................................... 12

*AquaTex Industries, Inc. v. Techniche Solutions,*
479 F.3d 1320 (Fed. Cir. 2007) ............................................................................... 22

*Bayer AG v. Elan Pharms. Research Corp.,*
212 F.3d 1241 (Fed. Cir. 2000) ............................................................................... 13

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.,*
296 F. 3d 1106 (Fed. Cir. 2002) .............................................................................. 13

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ............................................................................................... 13

*Frank's Casting Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.,*
389 F.3d 1370 (Fed. Cir. 2004) ............................................................................... 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) ............................................................................................... 12

*Network Commerce, Inc. v. Microsoft Corp.,*
422 F.3d 1353 (Fed. Cir. 2005) ............................................................................... 23

*Texas Instruments, Inc. v. Cypress Semiconductor Corp.,*
90 F.3d 1558 (Fed. Cir. 1996) ................................................................................. 23

*Wahpeton Canvas Co., v. Frontier, Inc.,*
870 F.2d 1546 (Fed. Cir. 1989) ............................................................................... 13

*Welker Bearing Co. v. PHD, Inc.,*
550 F. 3d 1090 (Fed. Cir. 2008) .......................................................................... 14, 16

STATUTES

35 U.S.C. § 102 ............................................................................................................ 1

35 U.S.C. § 103 ............................................................................................................ 1

35 U.S.C. § 112 ...............................................................................................................................13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 (c) ......................................................................................................................12

Defendants-Counterclaimants IYG Holding Co., 7-Eleven, Inc, Vcom Financial Services, Inc., and Cardtronics USA, Inc. (collectively, "Defendants") submit this memorandum of law in support of their motion for summary judgment of non-infringement of the asserted claims of U.S. Patent Nos. 6,945,457 ("the '457 patent"), 7,571,850 ("the '850 patent"), 7,591,420 ("the '420 patent"), 7,591,158 ("the '158 patent"), 7,597,248 ("the '248 patent") and 7,600,677 ("the '677 patent") (collectively, "patents-in-suit").[1]

## I.    NATURE AND STAGE OF PROCEEDINGS

This action was commenced almost five years ago, alleging that 7-Eleven's Vcom Automated Teller Machines ("ATM") machines, supplied by NCR Corporation ("NCR"), infringe the '457 patent. (Complaint, dated Jan. 23, 2006 ("Compl."), D.I. 1.) Soon thereafter, NCR filed a petition for *ex parte* reexamination of the '457 patent, and the parties stipulated to a stay pending reexamination. (D.I. 40). The PTO has now finally rejected all claims being reexamined, as anticipated under 35 U.S.C. § 102 or obvious under 35 U.S.C. § 103, and the Board of Patent Appeals and Interferences heard ATL's appeal on August 4, 2010. During the stay, ATL filed twenty-eight continuation applications, each of which claims priority to the '457 patent. In addition to the '457 patent, ATL now asserts five patents that issued from the continuation applications, which include the '850 patent, the '420 patent, the '158 patent, the '248 patent and the '677 patent (collectively, the "Continuation Patents"). (D.I. 59, 60.)

---

[1] The '457 patent and the Continuation Patents (together, the "patents-in-suit") share a common specification. For the convenience of the Court, this brief refers and cites only to the specification of the '457 patent. Copies of the patents-in-suit and the associated file histories are part of the joint appendix submitted by the parties in conjunction with the claim construction briefing ("Joint Appendix"). Where applicable, the cited exhibits are part of the Joint Appendix. However, to the extent exhibits are not in the Joint Appendix, they are included in the Declaration of Arun Chandra filed in Conjunction with Defendants' Memoranda of Law in Support of their Motions for Summary Judgment of Non-Infringement and Invalidity, filed concurrently herewith.

On August 13, 2009, the Court *sua sponte* lifted the stay, and so-ordered a schedule on

September 2, 2009, which provided for claim construction hearing and oral arguments for the

dispositive motions on December 10, 2010, and a Jury Trial starting on March 28, 2011.

(D.I. 54.)  Fact discovery is substantially complete and expert reports on which the parties bear

the burden of proof have been served.

## II.    SUMMARY OF ARGUMENT

The main issue of dispute between the parties is whether the Vcom ATMs provide a retail

transaction to the consumer *through an Internet interface* to the automated teller machine.  If the

Vcom ATMs do not provide a retail transaction to the consumer *through an Internet interface*

then none of the patents-in-suit are infringed and the case is over.  The patent specification and

file history make it crystal clear that the claimed "Internet interface" means access to the

Internet.  After learning that the Vcom ATMs do not allow access to the Internet, Plaintiff

changed its infringement theory.  Specifically, Plaintiff now argues that the Vcom ATMs

infringe because they communicate using TCP/IP; that is, Plaintiff is equating TCP/IP with being

the recited "Internet Interface."  As discussed below and in the Defendants' Opening Claim

Construction Brief, TCP/IP is not the claimed "Internet interface".  The patentee expressly

described the "Internet interface" as follows:

> The present invention is generally related to providing the
> capability of conducting retail transactions on an integrated
> automated transaction machine that has an *Internet interface. . . .*
> For example, a retail store desiring to increase traffic in the store
> can place the automated teller machine in a store to attract new
> customers by offering banking services through the automated
> teller machine and by also offering the ability to conduct retail
> transactions and to *have Internet access through the automated
> teller machine . . .* For example, a consumer can *confirm a
> banking transaction with a partner or a spouse over the Internet*
> before consummating the transaction on the automated teller
> machine.

2

The Vcom ATMs do not have (and never had) any such ability. Thus, the Vcom ATMs do not infringe any of the patents-in-suit, because they do allow access to the Internet (*i.e.*, do not have the claimed "Internet interface").



ATL contends that "/" means either "and" or "or" and therefore the accused Vcom ATMs infringe because they have a magnetic stripe card reader. However, during prosecution, to obtain allowance, ATL expressly argued that "/" meant "and" so as to circumvent a cited prior art reference; this interpretation is also consistent with the specification. Thus, ATL cannot credibly argue that "/" means anything other than "and".

Lastly, ATL has not proffered any basis for proceeding with its claim of infringement under the doctrine of equivalents. ATL's expert's analysis is deficient, as a matter of law. That deficiency is not surprising, however, because, to obtain allowance of its patents, ATL made several concessions during prosecution which bar it from asserting the doctrine of equivalents. Thus, as a matter of law, the Court should find that the Vcom ATMs do not infringe any of the patents-in-suit under the doctrine of equivalents.

3

### III.   STATEMENT OF MATERIAL FACTS

Defendants submit that the following facts are undisputed.

#### A.   ATL's Allegations of Infringement

This action was commenced almost five years ago, alleging that 7-Eleven's Vcom ATMs,

manufactured and supplied by NCR, infringed the '457 patent. (Complaint, dated Jan. 23, 2006

("Compl."), D.I. 1.) Today, although the Vcom ATMs are available at 7-Eleven stores, they are

owned and operated by Cardtronics USA. ATL asserts that claims 1, 2, 3, 5, 9, 10 and 14 of the

'457 patent are infringed.

ATL also asserts that claims 1, 2, 3, 5, 11, 12, 13 and 15 of each of the Continuation

Patents is infringed.

#### B.   The Asserted Claims of the Patents-In-Suit

##### 1.   The '457 Patent

The patentee filed a provisional patent application, bearing serial number 60/017,533, on

May 10, 1996. A year later, on May 9, 1997, the patentee filed a PCT application, bearing serial

number PCT/US97/08089, which claims priority to the provisional application. On November 6,

1998, the PCT application was converted into a U.S. patent application, bearing serial number

09/180,558 and listing David Barcelou as the inventor, which issued into the '457 patent on

September 20, 2005.

The '457 patent discloses an integrated machine that combines the functions of an ATM

with the functions of an *Internet* kiosk.   Independent claim 1 reads as follows:

> Integrated banking and transaction apparatus for use by a consumer, comprising:
>
> > an automated teller machine; and
>
> > means for *providing a retail transaction to the consumer through an Internet interface* to the automated teller machine

4

(emphasis added).   Independent claim 9 reads as follows:

> A method of providing banking services and transaction capability to a consumer in a single automated transaction machine, comprising the steps of:
>
>> providing automated teller machine access to the consumer via the automated transaction machine; and
>>
>> *providing Internet access to the consumer* via the automated transaction machine *and realizing a retail transaction.*

(Emphasis added.)

The only disclosure of an "Internet interface" in the specification is an embodiment that combines an ATM with an Internet kiosk, allowing a consumer to both withdraw money and surf the Internet. *See, e.g.*, JA 1, '457 patent Abstract; column 1, lines 46-58; column 4, lines 40-47; Fig. 3b.  The "Summary of the Invention" specifically states:

> The integrated system generally avoids duplicating hardware or functions in the course of delivering the goods or services offered, so for-example in a combination ATM *and Internet kiosk* the same credit card or smart card reader is used for both the ATM and *the Internet kiosk functions*, the same control screen activates the ATM functions and *the Internet functions*, and etc.  (JA 1, '457 patent, Column 1, lines 48-55 (emphasis added).)

Figure 3b shows a block-level diagram of the ATM/Internet kiosk, where an undisclosed "control means" is connected to a control screen and a modem, which itself is connected to an undisclosed "Internet interface."

5



FIG. 3b

That the claimed invention is a combined ATM and Internet kiosk is also discussed in the

prosecution history of the '457 patent as follows:

> The present invention is generally related to providing the
> capability of conducting retail transactions on an integrated
> automated transaction machine that has an *Internet interface.* The
> present invention, therefore, advantageously expands the
> capabilities of automated teller machines.  For example, a retail
> store desiring to increase traffic in the store can place the
> automated teller machine in a store to attract new customers by
> offering banking services through the automated teller machine
> and by also offering the ability to conduct retail transactions and *to
> have Internet access* through the automated teller machine . . . For
> example, *a consumer can confirm a banking transaction with a
> partner or a spouse over the Internet* before consummating the
> transaction on the automated teller machine. (JA 7 at pg 144,
> Amendment, dated January 9, 2004, page 7 (emphasis added).)

With respect to the "means for providing a retail transaction to the consumer through an

Internet interface," the patentee explained that the phrase meant "means for providing Internet

access to the consumer." (JA 7 at pg 127, '457 patent FH Paper No. 13 at 9.)  The patentee

further noted, in distinguishing his invention over prior art, that claim 1 should be understood to

be "an ATM with an Internet connection to conduct retail transactions." (JA 7 at pg 145, '457

patent FH Paper No. 15 at 8.)  In the same vein, the patentee referred to issued claim 28 (which also recites "an Internet interface to the automated teller machine" *albeit* for providing "the consumer access to the floral delivery service") as disclosing "an automated teller machine *having an Internet connection,* wherein *the Internet connection allows access to a florist* and *a floral arrangement can be purchased."* (*id.* (emphasis added).)

Dependent claim 2 requires a "smartcard reader/encoder".  Dependent claim 3 requires a "magnetic stripe card reader/encoder".  As discussed in greater detail in the Defendants' Opening Claim Construction Brief, to obtain allowance of their claims, the patentee argued to the PTO that its use of "/" between words meant "and."  Specifically, during the re-examination of the '457 Reexam, ATL's expert stated as follows:

> 33.    The Examiner incorrectly interprets the term "smartcard/magnetic stripe interface" as "smartcard or magnetic stripe interface[20]". The patent clearly shows both smartcard and magnetic stripe means as available in an ATM:
>
>> "[] ATM with traditional ATM hardware [] (and including [] magnetic stripe card reader []) is augmented with additional means as follows. The ATM is fitted with a smart card reader/encoder, so that in addition to the traditional bill dispenser the ATM can dispense encodable currency [].[21]"

(JA 13 at pg. 347, Declaration of Shukri Souri, Ph.D, dated December 14, 2007 at ¶ 33.)  Indeed, there is no other explanation of "/" in the patent or the file history.  Thus, claim 2 requires a smartcard reader *and* encoder, and claim 3 requires a magnetic stripe reader *and* encoder. Similarly, claim 10, which recites "the step of providing a smartcard/magnetic stripe interface" requires providing a smartcard and magnetic stripe interface.

## 2.    The Continuation Patents

Prior to the issuance of the '457 patent, a continuation application Serial No. 11/123,982 was filed on May 6, 2005.  While that application was still pending, a continuation application Serial No. 11/818,217 was filed on June 13, 2007.  Another round of continuations of 11/818,217

were filed on October 31, 2007. Of those continuation applications, Serial No. 11/981,920

issued into the '158 patent; Serial No. 11/981,965 issued into the '248 patent; Serial No.

11/981,966 issued into the '850 patent; Serial No. 11/981,968 issued into the '420 patent; and

Serial No. 11/982,241 issued into the '677 patent.

The disclosures of the Continuation Patents are identical to that of the '457 patent.

The claims of each Continuation Patent are identical, with the exception of the eleven

words highlighted below. For example, Claim 1 of the '850 patent is as follows:

> An integrated banking and transaction machine for use by a consumer to purchase access to retail ATM services, comprising:
>
> > an automated teller machine;
> >
> > a user interface to the automated teller machine;
> >
> > means for identifying the user to the automated teller machine, further comprising a smart card/magnetic stripe reader/encoder and a sensor;
> >
> > *an Internet interface to an Intranet connection* to the automated teller machine that uses encryption services and security services to provide the user access to the user interface and retail ATM service; and
> >
> > access to the automated teller machine user interface whereupon the consumer may selectively dispense *encodable credit* using the integrated banking and transaction machine providing the retail ATM service;
> >
> > wherein the consumer can purchase access to the retail ATM service through use of the user interface, *Intranet and Internet* connections.

(emphasis added).

The italicized claim terms relate to the type of "network," "interface," or "connection"

the integrated banking and transaction machine utilizes for data communications and the form of

money the ATM dispenses, and these are the only words that change between claim 1 of each

Continuation Patent.

Claim 1 of the '420 patent is as follows:

8

An integrated banking and transaction machine. . ., comprising:

* * *

*an Internet interface to an Intranet connection* to the automated teller machine. . .

access to the automated teller machine user interface whereupon the consumer may selectively dispense *encodable currency*. . .;

wherein the consumer can purchase access to the retail ATM service through use of the user interface, *Intranet and Internet* connections.

(emphasis added).

Claim 1 of the '158 patent is as follows:

An integrated banking and transaction machine. . ., comprising:

* * *

*an Internet interface to an Internet connection* to the automated teller machine. . .

access to the automated teller machine user interface whereupon the consumer may selectively dispense *currency*. . .;

wherein the consumer can purchase access to the retail ATM service through use of the user interface and *Internet services connections*.

(emphasis added).

Claim 1 of the '248 patent is as follows:

An integrated banking and transaction machine. . ., comprising:

* * *

*network services to financial network connections* to the automated teller machine. . .

access to the automated teller machine user interface whereupon the consumer may selectively dispense *cash*. . .;

wherein the consumer can purchase access to the retail ATM service through use of the user interface and *financial network connections*.

9

(emphasis added).

Claim 1 of the '677 patent is as follows:

> An integrated banking and transaction machine. . ., comprising:
>
> \* \* \*
>
> *an Internet interface to the World Wide Web* to the automated teller machine. . .
>
> access to the automated teller machine user interface whereupon the consumer may selectively dispense *currency. . .*;
>
> wherein the consumer can purchase access to the retail ATM service through use of the user interface and the *World Wide Web connections*.

(emphasis added).

ATL accuses the Cardtronics Vcom ATM network of infringing each of the different forms of networks in its patents-in-suit:

- "an Internet interface to an *Intranet* connection" (Infringement Expert Report of Shukri, Souri, Ph.D (DA 14, "Souri Inf. Rept.") pp. B-86, B115, emphasis added)

- "an Internet interface to an *Internet* connection" (DA 14, Souri Inf, Rept. p. B-144, emphasis added)

- "network services to *financial network* connections" (DA 14, Souri Inf, Rept. p. B-185)

- "an Internet interface to the *World Wide Web*" (DA 14, Souri Inf, Rept. p. B-220)

## C.    The Accused Vcom ATMs

ATL contends that the Vcom ATMs available at 7-Eleven stores infringe the asserted claims of each of the patents-in-suit.  The Vcom ATMs, available at 7-Eleven stores, are owned and operated by Cardtronics USA and have been manufactured by NCR.

**REDACTED**



**REDACTED**



---

[2] As discussed in greater detail in Defendants' Opening Claim Construction Brief, TCP/IP is a set of communication protocols that are used to reliably transmit data over packet-switched networks. ([Lucantoni Invalidity Report] ¶¶ 51-53.) That is, TCP/IP is a communications protocol utilized for the transmission of data between and within a network. Though TCP/IP may be used for communicating information on the Internet (or some other form of network), it itself is not the Internet.





## IV.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). Once the moving party demonstrates an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The mere existence of some evidence in support of the nonmoving party, however, is insufficient for denial of summary judgment; there must be enough evidence to enable a reasonable jury to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On the issue of infringement, the patentee bears the burden of proof.

## V. THE VCOM ATMS DO NOT INFRINGE THE ASSERTED CLAIMS, AS A MATTER OF LAW

### A. The Law Regarding Infringement

Literal infringement of an asserted claim requires "that each and every limitation set forth in a claim appear in an accused product." *Frank's Casting Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004) (internal citation omitted). Said differently, "[i]f any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharms. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). A dependent claim includes all of the limitations of the independent claim from which it depends and any intervening dependent claims, and therefore if an independent claim is not infringed, the dependent claims are likewise not infringed. *Wahpeton Canvas Co., v. Frontier, Inc.*, 870 F.2d 1546, 1552, n. 9 (Fed. Cir. 1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim."); *see also* 35 U.S.C. § 112, ¶ 4 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").

Claim elements may also be recited in "means-plus-function" form. For means-plus-function claims, the claim element is construed by first construing the function recited in the claim elements and then identifying the structure disclosed in the patent specification which corresponds to the construed function. *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 296 F. 3d 1106, 1113 (Fed. Cir. 2002). For infringement, the accused product must perform the function as construed and must have the corresponding structure or structural equivalents thereof, as understood at the time of the issuance of the claim. *See Welker Bearing Co. v. PHD, Inc.*, 550 F. 3d 1090, 1099-1100 (Fed. Cir. 2008).

### B.    The Accused Vcom ATMs Do Not Allow Users to Access the Internet

The crux of the dispute is whether the Vcom ATMs provide a retail transaction to the

consumer *through an Internet interface* to the automated teller machine.  Thus, the issue further

boils down to whether the Vcom ATM has an "Internet interface".  If the Vcom ATM does not

have an "Internet interface," then there is no infringement.

### 1.    The '457 Patent Is Not Infringed

Claim 1 of the '457 patent reads as follows:

> 1.    Integrated banking and transaction apparatus for use by a consumer, comprising:
>
> (a)[3]  an automated teller machine; and
>
> (b)  *means for providing a retail transaction to the consumer through an Internet interface to the automated teller machine.*

(Emphasis added.)  (Statement of Material Facts ("SF") ¶ 4.)

Element (b) of claim 1 is written in means-plus-function format.  Thus, to infringe claim

1 and its dependent claims 2, 3 and 5, the accused ATMs must perform the function of the

claimed "means for *providing a retail transaction to the consumer through an Internet interface*

*to the automated teller machine,*" recited in element (b) (emphasis added).

Plaintiff argues that the Vcom ATMs infringe because they communicate using TCP/IP,

and TCP/IP meets the recited "Internet Interface."  (JA 13 p. 1219 ATL's Appeal Brief on re-

exam, p. 43 ("In 2005, another NCR brochure shows that *every* ATM offered by NCR had a

TCP/IP protocol, i.e., an Internet interface."); JA 13 p. 1105 Declaration of David Barcelou, ¶ 11

(In 2005, another NCR brochure shows that *every* ATM offered by NCR had a TCP/IP protocol,

*i.e.*, an Internet interface.").)

---

[3]  The claim elements have been given alphabetical prefixes for ease of reference.

Defendants, in contrast, submit that "Internet interface" means access to the Internet, and therefore the Vcom ATMs must allow a consumer to have access to the Internet for there to be infringement. The "Internet" is "a public network that is logically linked together by a globally unique address space."[4]

As discussed in Defendants' Opening Claim Construction Brief, the recited function requires "allowing the consumer to access the Internet to complete a retail transaction over the Internet using the automated teller machine." (Defendants' Opening Claim Construction Brief at pp. 13-14, 19-22.) Indeed, the patentee itself stated during the prosecution of the '457 patent that the claimed invention must provide "the capability of conducting retail transactions on an integrated automated transaction machine that has an *Internet interface*." (JA 7 p. 144 Amendment, dated January 9, 2004, page 7.) To remove any ambiguity, the patentee even gave an example of what it means to have an Internet interface: "For example, *a consumer can confirm a banking transaction with a partner or a spouse over the Internet* before consummating the transaction on the automated teller machine." (JA 7 p. 7Amendment, dated January 9, 2004, page 7 (emphasis added).) Thus, regardless of whether the Court picks ATL's proffered definition of the "Internet interface" or the Defendants', there can be no dispute that the "Internet interface" must allow a consumer to confirm a banking transaction with a partner or a spouse over the Internet (i.e., have the ability to communicate with another person using the Internet). (SF ¶¶ 5-7.)

████████████████████████████████████████

████████████████████████████████████████████████

---

[4]   While ATL proffers a long and convoluted definition of the Internet, even its definition requires the Internet to be "the global information system that – i. is logically linked together by a globally unique address space based on the Internet Protocol (IP) or its subsequent extensions/follow-on" in addition to satisfying other characteristics.

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████    *Welker*, 550 F.3d at 1099.

Claim 9 of the '457 patent reads as follows:

> 9.    A method of providing banking services and transaction capability to a consumer in a single automated transaction machine, comprising the steps of:
>
> > (a) providing automated teller machine access to the consumer via the automated transaction machine; and
> >
> > (b) *providing Internet access to the consumer via the automated transaction machine and realizing a retail transaction.*

(Emphasis added.)

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

19

████████████████████████████████████████████████ Thus,

there is no infringement of claim 9 or its dependent claims 10 and 14, because the accused Vcom

ATMs do not perform the claimed function.

### 2.    The Continuation Patents Are Not Infringed

The claims of each of the Continuation Patents require that the consumer be able to use

an Internet connection (*i.e.*, Internet interface).  For example, Claim 1 of 850 patent is as follows:

> 1.    An integrated banking and transaction machine for use by a consumer to purchase access to retail ATM services, comprising:
>
> * * *
>
> *an Internet interface* to an Intranet connection to the automated teller machine that uses encryption services and security services to provide the user access to the user interface and retail ATM service;
>
> and access to the automated teller machine user interface whereupon the consumer may selectively dispense encodable credit using the integrated banking and transaction machine providing the retail ATM service;
>
> wherein *the consumer can purchase access to the retail ATM service through use of the user interface, Intranet and **Internet connections***.

(Emphasis added.)  (SF ¶ 12.)

████████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

█████████





Thus, the Vcom ATMs do not infringe any of the claims of the Continuation Patents.

**C.     The Accused Vcom ATMs Do Not Infringe Any Asserted Claims Because They Do Not Have a Smartcard Reader *and* Encoder *and* a Magnetic Stripe Reader *and* Encoder**

**1.     The '457 Patent Is Not Infringed**

Claim 2, which depends from claim 1, reads as follows: "The integrated banking and

transaction apparatus according to claim 1, further *comprising a smartcard reader/encoder*

(emphasis added)." ███████████████████████████████████

███████████████████████████████████

█████████████████████ Moreover, as discussed in Defendants' Opening Claim Construction

Brief, the claim requires that the "smartcard reader/encoder" have both a smartcard reader *and*

encoder.  (Defendants' Opening Claim Construction Brief at pp. 25-28; see also SF ¶ 28.)  The

specification specifically states that the "ATM is fitted with a smart card reader/encoder, so that

in addition to the traditional bill dispenser the ATM can dispense encodable currency onto a

smart card."  ('457 patent, col. 3, lines 21-24; *see* SF ¶ 9.)  Of course, to "dispense encodable

currency", the ATM needs both a smartcard reader and encoder, because encodable currency

cannot be dispensed by just a reader.  Thus, it is clear as daylight that the use of "/" can only

mean "and," just as ATL stated during the re-examination of the '457 patent ███████████

█████████████████████████████████████████████████

███████████████████████████

        Claim 3, which depends from claim 1, reads as follows:  "The integrated banking and

transaction apparatus according to claim 1, further comprising a *magnetic stripe card*

*reader/encoder* (emphasis added)." ███████████████████████████

███████████████████████ However, as discussed above and in the Defendants'

Opening Claim Construction Brief, the phrase "a magnetic stripe card reader/encoder" must be

construed to require that the claimed device has a magnetic stripe card reader *and* encoder.

(Defendants' Opening Claim Construction Brief at pp. 25-28; see also SF ¶ 28.) █████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████

Claim 10, which depends from claim 9, reads as follows: "The method of providing banking services and transaction capability according to claim 9, further comprising the step of providing a *smartcard/magnetic stripe interface* to the consumer via the automated transaction machine (emphasis added)." ███████████████████

████████████████████████ Again, as discussed above and in the Defendants' Opening Claim Construction Brief, because of the patentee's arguments during prosecution, the phrase "smartcard/magnetic stripe interface" must be construed to require that the claimed device has a smartcard reader *and* encoder *and* magnetic stripe card reader *and* encoder. (Defendants' Opening Claim Construction Brief at pp. 25-28; see also SF ¶ 28██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

## 2.     The Continuation Patents Are Not Infringed

In pertinent part, claim 1 of each of the Continuation Patents reads as follows:

> 1.     An integrated banking and transaction machine for use by a consumer to purchase access to retail ATM services, comprising:
>
>           * * *
>
>           means for identifying the user to the automated teller machine, further comprising *a smart card/magnetic stripe reader/encoder* and a sensor. . . .

(Emphasis added.)

Claim 1 of each of the Continuation Patents recites that the "means for identifying the user to the automated teller machine" comprises, *inter alia*, "a smart card/magnetic stripe reader/encoder." ██████████████████████████

██████████████████ As discussed above and in Defendants' Opening Claim Construction Brief, because of the patentee's arguments during prosecution, the phrase "a smart card/magnetic

stripe reader/encoder" must be construed to require that the claimed device has a smartcard reader *and* encoder *and* magnetic stripe card reader *and* encoder.   (Defendants' Opening Claim Construction Brief at pp. 25-28; see also SF ¶ 28.) █████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████

### D.   ATL Cannot, as a Matter of Law, Establish that the Accused Vcom ATMs Infringe the Patents-in-Suit under the Doctrine of Equivalents

In its interrogatory answers and expert reports, ATL asserts that certain elements in the asserted claims of the patents-in-suit are present in the accused Vcom ATMs under the doctrine of equivalents.  ATL bears the burden of establishing infringement under the doctrine of equivalents.  *AquaTex Industries, Inc. v. Techniche Solutions*, 479 F.3d 1320, 1328 (Fed. Cir. 2007).  First, ATL proffers no evidence in support thereof.  More importantly, the actual evidence requires an affirmative finding of no infringement under the doctrine of equivalents.

In his report, ATL's expert, Dr. Souri, opines that the TCP/IP protocol used by the Vcom ATMs is equivalent to the claimed:

- "Internet interface" (DA 14, Souri Inf. Rept. at B-22 (discussing '457 patent claim 1)),

- "Internet access," (DA 14, Souri Inf. Rept. at B-55 (discussing '457 patent claim 9)),

- "Internet connection," (DA 14, Souri Inf. Rept. at B-87 (discussing '850 patent claim 1), B-116 (discussing '420 patent claim 1), B-118 (discussing '420 patent claim 1), B-145 (discussing '158 patent claim 1),

- "Intranet connection," (DA 14, Souri Inf. Rept. at B-91 (discussing '850 patent claim 1)), and

- "financial network connection" (DA 14, Souri Inf. Rept. at B-187 (discussing '248 patent claim 1)).[5]

The only support Dr. Souri provides is: ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████

(Souri Supplemental Report ¶ 48.)  This conclusory statement is pure *ipse dixit*. In particular, ██

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ *See Texas Instruments, Inc.*

*v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996) ("a patentee must ...

provide particularized testimony and linking argument as to the 'insubstantiality of the

differences' between the claimed invention and the accused device or process, or with respect to

the function, way, result test when such evidence is presented to support a finding of

infringement under the doctrine of equivalents.  Such evidence must be presented on a

limitation-by-limitation basis.  Generalized testimony as to the overall similarity between the

claims and the accused infringer's product or process will not suffice."); *see also Network*

*Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005) ("The same rule

applies in the summary judgment context.").  Thus, because ATL has provided no evidence

regarding the doctrine of equivalents, Defendants are entitled to a summary judgment of no

infringement under the doctrine of equivalents.

Moreover, ATL created an estoppel during prosecution that forecloses it from obtaining any equivalence for the Internet or "financial network" connections. In particular, the patentee argued during the reexamination that the prior art "information superhighway" was not the same as the Internet.

> This clearly demonstrates that: the Internet was not synonymous with the Information Superhighway at the time of the invention; the Information Superhighway was not a viable communications network; the interfacing of the Internet to an automated transaction machine (ATM) was non-obvious; and, therefore, Claim 1 is valid since it was novel, unanticipated and non-obvious.

(JA 13 pg 344, Souri Declaration, dated 12/14/07, ¶ 17.) So it was Dr. Souri's expert opinion that the Internet was different from the Information Superhighway and is a very specific type of network.[6] Having thus limited the Internet to something very specific, ATL has forfeited the right to allege infringement under the doctrine of equivalents.

Additionally, during the '457 patent re-examination, both the patentee and Dr. Souri argued that one of the prior art references, the Saigh patent, did not disclose the invention of the '457 claims because, although it disclosed the use of the Internet, the claimed use of the Internet in the '457 patent was very specific and was not akin to the use of traditional networks:

> First, the Examiner's reliance on col. 1, lines 38-50 of Saigh is misplaced. This section of Saigh is in the "Background of the Invention", not the portion of the Saigh specification which discusses the invention. Second, Saigh must be read for *all* that it teaches. Specifically, lines 44-50 of col. 1 in Saigh actually teach *away* from using the Internet because right after mentioning the Internet (col. 1, line 40) Saigh states:
>
> > As presently operated, however, such networks [including the Internet] are unsuitable for the distribution of proprietary information and information which is intended for limited copying.

---

[5]  With respect to the '677 patent, Dr. Souri does not provide any analysis or conclusion regarding the Doctrine of Equivalents. His report is silent as to the infringement of the '677 patent under the Doctrine of Equivalents.

[6]  Curiously, nowhere in the specification or the prosecution history does ATL contend that a TCP/IP network operates in substantially the same way as an Internet network.

> The free transfer of information using such networks provides little
> or no protection for copyright and proprietary information owners.

JA 13 at pg 883. *See also*, JA 13 at pg 898, Second Souri Declaration at
Paragraph 16.

\* \* \*

> In view of the above, and further in view of the fact that Saigh does state
> that the use of the Internet, among other networks, is "unsuitable" for the
> transmission of, e.g., proprietary information (Saigh at col. 1, lines 38-50),
> it is respectfully submitted that a person of ordinary skill in the art at the
> time the Barcelou invention was made would not read Saigh as teaching or
> even suggesting an integrated banking and transaction apparatus for use by
> a consumer comprising an automated teller machine and a means for
> providing a retail transaction to the consumer through an Internet interface
> to the automated teller machine. *Accord*, Second Souri Declaration at
> Paragraphs 18 and 20.

> Claim 9, the other rejected independent claim, is a method claim while
> claim 1 is to an apparatus. Nevertheless, claim 9 is of similar scope to
> claim 1 because claim 9 requires a single automated transaction machine
> comprising an automated teller machine, and Internet access to the
> consumer via the automated transaction machine for realizing a retail
> transaction. Therefore, for these reasons set forth above, Saigh does not
> anticipate claim 9.

(JA 13 at pg 883-884, Reexamination Response, dated 5/29/08, pp. 4-5.) Thus, in light of the

patentee's statements that the claimed Internet was distinct from other networks traditionally

used by an ATM, ATL is barred from arguing that the claimed Internet is equivalent to anything

else. Thus, Defendants respectfully submit that they are entitled to a summary judgment of non-

infringement under the doctrine of equivalents of the '457 patent, '850 patent, '420 patent, '158

patent and the '677 patent.

With respect to the '248 patent, which recites a "network services to financial network

connections to the automated teller machine" so as to enable a consumer to "purchase access to

the retail ATM service through use of the . . . financial network connections," ATL argued that a

28

"financial network" was something very specific.  Indeed, ATL contended that a financial

network is not even the same as a "banking network," much less TCP/IP.

> Claim 16 in each application is each application's single independent
> claim.  Claim 16 of the instant application requires "network services to
> financial network connections to the automated teller machine", where "a
> customer can purchase access to the retail ATM service through the use of
> the user interface and financial network connections".

> In contrast, claim 16 of [another co-pending] application required
> "network services to banking network connections to the automated teller
> machine", where "a customer can purchase access to the retail ATM
> service through the use of the user interface and banking network
> connections".

> A network services to *financial* network connections (present invention) is
> not the same as network services to *banking* network connections ([the
> other co-pending] application).  Accordingly, applicant submits that the
> Examiner's rejection under 35 U.S.C. § 101 is incorrect and should be
> withdrawn.

(JA 11 at pg 147, Amendment, dated  11/13/08, p. 2; see also JA 11 at pg 57, Amendment, dated

5/11/09, p. 2.)  Because of ATL's arguments regarding the very specific definition of a financial

network, it is barred from arguing equivalents.  Thus, Defendants respectfully submit that they

are entitled to a summary judgment of non-infringement under the doctrine of equivalents of the

'248 patent.

## VI.   CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment of non-

infringement should be granted.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Eric J. Lobenfeld
Ira J. Schaefer
Arun Chandra
Brian G. Strand
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY  10022
Tel: (212) 918-3000


Dated:  October 8, 2010
Corrected Version Dated: October 18, 2010
Public Version Dated: October 28, 2010
987640/ 30232

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19801
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendants-Counterclaimants*
*IYG Holding Co., 7-Eleven, Inc., Vcom*
*Financial Services, Inc. and Cardtronics USA,*
*Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on October 28, 2010, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on October 28, 2010, I have Electronically Mailed the document to the following person(s):

Frederick L. Cottrell, III
Kelly E. Farnan
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
Cottrell@rlf.com
farnan@rlf.com

Albert L. Jacobs, Jr.
Gerrard F. Diebner
Daniel A. Ladow
Timothy M. Salmon
Troutman Sanders LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0700
Albert.Jacobs@troutmansanders.com
Gerard.Diebner@troutmansanders.com
daniel.ladow@troutmansanders.com
timothy.salmon@troutmansanders.com

Jeffrey C. Morgan
Seyed Kaveh E. Rashidi-Yazd
Troutman Sanders LLP
600 Peachtree St NE, Suite 5200
Atlanta, GA 30308
Jeffrey.morgan@troutmansanders.com
kaveh.rashidi-yazd@troutmansanders.com

By:     */s/ David E. Moore*
       Richard L. Horwitz
       David E. Moore
       Potter Anderson & Corroon LLP
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, DE  19899-0951
       (302) 984-6000
       rhorwitz@potteranderson.com
       dmoore@potteranderson.com

767228 / 30232

2